E-FILED
Thursday, 17 July, 2014  03:22:46 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JUSMON RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BLOOMINGTON, ILLINOIS, | ) | Case No. 14-cv-1146 |
| CENTRAL ILLINOIS ARENA | ) | |
| MANAGEMENT, INC., JOHNSTON | ) | |
| CONTRACTORS, INC., and SPORT | ) | |
| SYSTEMS UNLIMITED CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R   &   O P I N I O N

This matter is primarily before the Court on Defendant City of Bloomington's Motion to Dismiss Complaint (Doc. 20) and Motions to Dismiss Counterclaims[1] (Doc. 22 and 38) filed by Defendants Sport Systems Unlimited Corp. and Johnston Contractor's Inc. The motions have been fully briefed and are ready for disposition. The City of Bloomington has also filed a Motion to Strike Exhibits (Doc. 39) attached to Plaintiff's response brief. Also before the Court is Central Illinois Arena Management, Inc.'s Motion to Dismiss the Counterclaim for Contribution of Sport

---

[1] Defendants in this matter have labelled their claims against their co-defendants as "counterclaims." However, as contemplated in subdivisions (a), (b), and (g) of Federal Rule of Civil Procedure 13, a "counterclaim" is filed against an opposing party while a "crossclaim" is filed against a co-party, when the claim arises out of the same transaction or occurrence. Thus, the claims for contribution should be labelled "crossclaims" and the Court will refer to them as such. However, when referring to the actual pleadings and motions, the Court will use the captioned title.

Systems Unlimited Corp. (Doc. 44). For the reasons stated below, the Motion to Dismiss Complaint (Doc. 20) and the Motions to Dismiss Counterclaim (Doc. 22 and 38) are GRANTED and the Motion to Strike Exhibits (Doc. 39) is DISMISSED as MOOT. The Motion to Dismiss the Counterclaim for Contribution of Sport Systems Unlimited Corp. (Doc. 44) is DENIED.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure[2] 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur*, 581 F.3d at 602 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST, Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Tamayo*, 526 F.3d at 1081 (7th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a

---

[2] These rules, and not state law, govern purely procedural matters in state cases tried in federal court, and apply to the state law claims. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008); s*ee also Brookshire v. Pa. R.R. Co.*, 14 F.R.D. 154, 156 (N.D. Ohio 1953).

plaintiff's complaint must plausibly suggest that the plaintiff has a right to relief, "raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## FACTUAL BACKGROUND[3]

Plaintiff filed the Complaint in this matter on April 16, 2014. (Doc. 1). The Complaint brings four Counts against four separate Defendants: the City of Bloomington ("the City"), Central Illinois Arena Management, Inc. ("CIAM"), Johnston Contractors, Inc. ("Johnston"), and Sport Systems Unlimited Corp. ("Sport Systems"). The City owns a sports venue called the U.S. Cellular Coliseum ("the Coliseum") in Bloomington, Illinois, and operates it through its agent, CIAM. (Doc. 1 at 3-5). The Coliseum was constructed by Johnston, including the installation of dasher boards manufactured by Sport Systems. (Doc. 1 at 6-7). Count I charges the City with willful and wanton negligence in owning, operating, managing, and maintaining the Coliseum. (Doc. 1 at 3-5). Count II charges CIAM with general negligence in operating, managing, and maintaining the Coliseum on behalf of the City. (Doc. 1 at 5-6). Count III charges Johnston with general negligence in constructing the Coliseum and installing the dasher boards. (Doc. 1 at 6). Finally, Count IV charges Sport Systems with strict liability in designing and manufacturing the dasher boards in a defective manner. (Doc. 1 at 7).

On May 17, 2013, Plaintiff was playing professional football in the Coliseum. (Doc. 1 at 2). At some point during the game, Plaintiff collided with and fell through

---

[3] As noted above, all well-pleaded facts must be construed in plaintiff's favor when ruling on a motion to dismiss; so these background facts are drawn from the Complaint. (Doc. 1).

a gate built into dasher boards surrounding the football field. (Doc. 1 at 2). The latch mechanism on the gate failed to keep the gate secure. (Doc. 1 at 3). Plaintiff suffered injuries from the collision and fall.

In its Motion to Dismiss the Complaint, the City argues that, as a local public entity under Illinois's Local Governmental and Governmental Employees Tort Immunity Act, 745 ILL. COMP. STAT. 10/1-101 *et seq.* ("Tort Immunity Act"), the City is immune from tort liability for negligence not resulting from willful and wanton conduct. (Doc. 20 at 1-2). Additionally, the City argues that it cannot be held liable under the Tort Immunity Act unless it had actual or constructive notice of the dangerous condition leading to Plaintiff's injuries. (Doc. 21 at 9-11).

On May 9, 2014, Sport Systems filed crossclaims against its co-defendants, seeking contribution from each co-defendant in the event that Sport Systems is found liable for Plaintiff's injuries. (Doc. 13 at 1-4). Sport Systems seeks contribution to the extent of each co-defendant's proportionate degree of fault in causing Plaintiff's injuries. (Doc. 13 at 1-4). Sport Systems denies any liability on its part for Plaintiff's injuries. (Doc. 13 at 2). Sport Systems was the only defendant sued on a theory of strict liability for manufacturing a defective product, the dasher boards.

In its Motions to Dismiss Counterclaim, the City argues that the Tort Immunity Act also bars contribution claims against local public entities in the absence of willful and wanton conduct. (Doc. 22 at 2, Doc. 38 at 2). The City claims that Sport Systems and Johnston have failed to plead "specific facts" alleging willful and wanton negligence and thus its crossclaim for contribution is statutorily barred.

4

(Doc. 22 at 3). Sport Systems filed a Response on June 18, 2014,[4] arguing that its crossclaim against the City should survive if Plaintiff's Complaint against the City survives the motion to dismiss, but that, if the City's motion to dismiss the crossclaim is granted, it should be granted without prejudice pending discovery. (Doc. 34 at 2). Johnston also filed a timely Response to the City's Motion to Dismiss Counterclaim which mirrors Sport Systems' Response. (Doc. 45).

Lastly, on July 10, 2014, CIAM filed a Motion to Dismiss the Counterclaim for Contribution of Sport Systems Unlimited Corp. (Doc. 44). As will be explained within this Order and Opinion, there is no need to wait for Sport Systems to respond to CIAM's motion, as it has no basis under federal law.

### DISCUSSION

As an initial matter, federal pleading standards apply to state law claims in diversity actions. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008). Despite the City's recognition of the application of federal pleading standards (Doc. 21 at 2), it continuously seeks to apply the more factually demanding state law pleading standard throughout its motions and supporting memoranda. While the Court agrees that Plaintiff has failed to state a claim against the City upon which relief can be granted, the Plaintiff is not required to plead specific facts sufficient to prove his case, as the

---

[4] According to Federal Rule of Civil Procedure 6 and Central District Local Rule 7.1(B)(2), Sport Systems' response to the City's motion was due on or before June 16th, not June 18th. No motion to enlarge the time within which to file a response was filed. However, since no motion to strike has been filed, the Court will allow the untimely submission to stand.

City consistently claims, but rather he must only provide factual allegations sufficient to support his claims, which he has not done.

## I.   Municipalities Are Immune From Liability For Damages Incurred By Plaintiffs Unless There Are Sufficient Allegations Of Willful And Wanton Conduct.

Generally, whether conduct is "willful and wanton" is a question of fact for the jury. *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008). However, a court can decide whether a plaintiff has alleged sufficient facts concerning the willful and wanton nature of a defendant's conduct as a question of law. *Robinson v. Thomas*, No. 93 C 4037, 1995 WL 608525 (N.D. Ill. 1995); *Doe v. Calumet*, 641 N.E.2d 498, 506 (Ill. 1994) (overruled implicitly on other grounds by *DeSmet ex rel. Estate of Hays v. County of Rock Island*, 848 N.E.2d 1030 (Ill. 2006)). "The mere characterization of acts as willful and wanton misconduct is insufficient to withstand a motion to dismiss." *Majewski v. Chi. Park Dist.,* 532 N.E.2d 409, 411 (Ill. App. Ct. 1988) (citing *Cipolla v. Bloom Twp. High Sch. Dist.*, 388 N.E.2d 31, 34 (Ill. App. Ct. 1979)). Similarly, under federal pleading standards, "[i]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The parties do not dispute that the City is a "local public entity" as that term is defined in the Tort Immunity Act. 745 ILL. COMP. STAT. 10/1-206 ("'Local public entity' includes a . . . municipality."). It is equally indisputable that, as a local public entity, the City falls under the protections of the Tort Immunity Act. 745 ILL. COMP. STAT. 10/1-101.1 ("The purpose of [the Tort Immunity Act] is to protect local public

entities . . . from liability arising from the operation of government."). The only disputed issue is whether the Plaintiff has pleaded sufficient facts to satisfy the Court that it is plausible the City engaged in willful and wanton conduct, as that term is defined in the Tort Immunity Act, 745 ILL. COMP. STAT. 10/1-210, thereby subjecting itself to potential liability beyond the protections afforded by the Act.

Section 3-106 of the Tort Immunity Act states, in relevant part, that a local public entity is not liable for injuries "where the liability is based on the existence of a condition of any public property . . . permitted to be used for recreational purposes, including . . . buildings or other enclosed recreational facilities, unless such local entity . . . is guilty of *willful and wanton conduct* proximately causing such injury." 745 ILL. COMP. STAT. 10/3-106 (emphasis added). The term "willful and wanton conduct" is specifically defined in the Tort Immunity Act as a "course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILL. COMP. STAT. 10/1-210. It is clear from the language of these provisions that absent allegations sufficient to show that the City engaged in willful and wanton conduct that proximately caused Plaintiff's injuries, the Plaintiff's claim must be dismissed due to the City's immunity from simple negligence.

Unfortunately for Plaintiff, his allegations do not support willful and wanton conduct on the part of the City. Plaintiff alleges that while playing football in the Coliseum, he fell through a gate in the dasher boards due to the failure of a latch mechanism. (Doc. 1 at 2-3). Plaintiff states that the City created the dangerous

7

condition by discovering it through regular inspection of the dasher boards, but failing to take action to fix the latch mechanism. (Doc. 1 at 3-4). Plaintiff describes the latch as "rusted and worn" and incapable of holding the dasher board closed. (Doc. 33 at 6). However, even accepting all of these factual allegations as true, Plaintiff's allegations do not plausibly suggest that he has a right to relief under applicable case law.

> A.  *The Complaint Does Not Contain Allegations That Sufficiently Touch Upon The City's Knowledge Of The Consequences Of Allowing The Dasher Board Latch To Remain.*

Plaintiff first argues that mere "[k]nowledge of the dangers and the activities rises to the level of willful and wanton conduct." (Doc. 33 at 4). His argument is that because the City knew of the danger presented by the latch mechanism, it engaged in willful and wanton conduct by allowing the football game to proceed. However, in order for knowledge of a danger to rise to the level of willful and wanton conduct, the actor, in addition to knowing "of the surrounding circumstances and existing conditions" of the purported danger, must also have knowledge "that his conduct will naturally and probably result in injury." *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 149 (Ill. App. Ct. 2010) (quoting *Bartolucci v. Falleti*, 46 N.E.2d 980, 983 (Ill. 1943)).

In support of his argument, Plaintiff cites *Hill v. Galesburg Cmty. Unit Sch. Dist. 205*, 805 N.E.2d 299 (Ill. App. Ct. 2004). In that case, the complaint survived a motion to dismiss by sufficiently alleging willful and wanton conduct. *Id.* at 305. There, a child, who failed to take proper precautions by not wearing eye protection, suffered eye injuries after a beaker exploded during a chemistry experiment

conducted by a teacher at the defendant's school. *Id.* at 301-02. The court held that the Tort Immunity Act did not apply to the defendant school district because the teacher had actual knowledge that the student was not wearing eye protection, had actual knowledge of the potential danger from not wearing eye protection and consciously disregarded the student's safety by allowing him to participate in the experiment without the eye protection. *Id.* at 305. These allegations were "sufficient for a jury to infer a 'reckless disregard' for [the student's] safety 'after knowledge of impending danger.'" *Id.* at 305 (quoting *Hadley v. Witt Unit Sch. Dist. 66*, 462 N.E.2d 877, 881 (Ill. App. Ct. 1984)).

*Hill* is readily distinguishable from the present case. *Hill* involved a claim of failure to supervise and dealt with immunity under section 3-108 of the Tort Immunity Act, which addresses a local public entity that has undertaken to supervise an activity which leads to the injury. *Hill*, 805 N.E.2d at 304-05. The defendant in *Hill* was statutorily responsible for the direct supervision and instruction the chemistry class under the Eye Protection in School Act, 105 ILCS 115/1 (West 2002). *Id.* at 303. In the present case, the Plaintiff does not allege the City had any such comparable duty—statutory or otherwise—to supervise and instruct the adult football players in the performance of their play or use of the Coliseum. Similarly, the Complaint is devoid of any allegation that the City took on the responsibility of supervising or instructing the players in their use of the Coliseum. This distinction alone makes *Hill* inapposite to the facts of this case and renders Plaintiff's contention that mere knowledge of the condition of the latch suffices to establish willful and wanton conduct unpersuasive.

9

Plaintiff is aware of the inapplicability of *Hill* to the facts alleged in this case so he attempts to argue that the City did instruct Plaintiff to harm himself simply by allowing the football game to occur while the City knew of the rusty and worn latch on the dasher board. (Doc. 33 at 7). The Plaintiff is asking the Court to stretch the meaning of the "instruction" beyond the limits of the boundaries established by the very cases he cites. Every case cited by the Plaintiff for the proposition that instructing one to engage in a dangerous activity suffices to show willful and wanton conduct, dealt with defendants who <u>directly</u> instructed the injured to engage in an <u>obviously dangerous</u> activity that proximately led to the injury. *E.g.*, *Karalyos v. Bd. of Educ. of Lake Forest Cmty High Sch. Dist. 115*, 788 F. Supp. 2d 727, 729 (N.D. Ill. 2011) (minor plaintiff injured from diving several feet into a pool after being instructed to do so by adult teacher); *Peters v. Herrin Cmty. Sch. Dist.*, 928 N.E.2d 1258, 1264 (Ill. App. Ct. 2010) (student football player injured after being instructed by coach to run over an obstacle); *Manuel v. Red Hill Cmty. Unit Sch. Dist. No. 10 Bd. of Educ.*, 754 N.E.2d 448, 459 (Ill. App. Ct. 2001) (disabled student suffering from cerebral palsy injured after being instructed to walk over snow-covered stairs by teacher). In other words, in each of the afore-mentioned cases, the injured person was complying or responding to an authority figure's direct instruction or request to engage in the respective activity. There are no comparable allegations in the instant Complaint that the City issued Plaintiff any instruction, request or order of any kind and the mere permission to play a professional football game on the premises of the Coliseum cannot be deemed a direct instruction to the Plaintiff to engage in any activity.

10

Plaintiff next baldly argues, without reference to any factual allegation in the Complaint, that "the City was aware of the dangers of participating in an arena football game with a defective dasher board." (Doc. 33 at 4). Plaintiff provides nothing to substantiate his assertion. There are no allegations in the Complaint that touch on a basis from which the City could possibly be assumed to know what dangers are associated with dasher boards with bad latches. For example, there are no allegations concerning how often dasher board accidents occur, how often dasher board latches fail, how often dasher boards have gates built into them secured by latches, what types of injuries inure to players who run through dasher boards, or how serious are those injuries. Plaintiff does not even bother to describe in the Complaint what dasher boards are designed to do.

Plaintiff simply makes bald allegations that the City knew or should have known that their failure to replace the latch mechanism would result in injury. Plaintiff states the City, due to regular inspection, was aware that the latch mechanism would fail, that the City failed to replace the latch mechanism, and that this failure to act constitutes willful and wanton conduct. (Doc. 33 at 4). These are exactly the types of inadequate abstract recitations of the elements of a cause of action that will not survive motions to dismiss in federal courts. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (mere label or legal conclusion entitled to no weight); *Brooks*, 578 F.3d at 581. So even assuming arguendo that the City regularly inspected the dasher boards and noticed the latch was rusted and worn, there are still no allegations, beyond Plaintiff's abstract recitation of the definition

of willful and wanton conduct, that the City knew that "[its] conduct [would] naturally and probably result in injury." *Oelze*, 927 N.E.2d at 149.

Instead, the Plaintiff cites to *Palmer v. Chicago Park Dist.*, 660 N.E.2d 146, 150 (Ill. App. Ct. 1995) for the proposition that "[c]ommon sense dictates that the City, who inspected the Coliseum regularly, simply should not have missed seeing a rusted and worn latch that would not hold a dasher board closed." (Doc. 33 at 6). *Palmer* dealt with the issue of whether the Defendant could plausibly deny not discovering the displacement of a thirty foot by three foot fence over the span of three months. *Id*. This case deals with a rusty old latch on a gate. The two items are simply too different to be comparable. *Palmer* would be more instructive for this case had there been allegations here that the entire gate or dasher board was displaced or askew. Moreover, as stated above, even had the City known about the worn and rusty latch, the Plaintiff has alleged nothing from which one can infer the City had any idea that allowing the latch to remain would naturally and probably result in Plaintiff's injury.

B.   *The Allegations That The City Was Aware Of The Danger Are Insufficient To Support A Claim Of Willful And Wanton Conduct.*

Plaintiff's third argument is that his allegations "of why the City was aware are sufficient to survive a motion to dismiss." (Doc. 33 at 6). On this point, Plaintiff alleges the City regularly inspected the premises and common sense should have dictated that they replace the latch. In support of his argument, Plaintiff cites *Carter v. New Trier E. High Sch.*, 650 N.E.2d 657 (Ill. App. Ct. 1995), in which the court held that, on a motion to dismiss, allegations of why the defendant knew or should have known of the dangerous condition can be  sufficient to state a valid

claim for willful and wanton misconduct. *Id.* at 662. However, Plaintiff ignores the key factual allegation on which the *Carter* court relied for its holding, which is that "others had complained to defendant regarding the danger presented and injuries sustained as a result thereof." *Id.* Plaintiff has made no allegation in his Complaint that the City received prior complaints about the latch in the dasher board gate or that there were previous injuries sustained by other users of the Coliseum attributable to the latch, the gate, or the dasher boards. Again, Plaintiff merely falls back on the proposition that "[c]ommon sense dictates that the City, who [sic] inspected the [Coliseum] regularly, simply should not have missed seeing a rusted and worn latch that would not hold a dasher board closed." (Doc. 33 at 6). For the same reasons discussed above, the proposition that "common sense" should have led the City to replace the latch is not applicable here; a latch on a gate is not comparable to an entire displaced fence.

Therefore, even if the Court were to agree that the City noticed the latch was rusty during its inspections, this would not mean the City had knowledge that a rusty latch was incapable of holding a dasher board gate closed, that the latch was dangerous, or that injuries would result from failing to replace the latch. In the absence of any factual allegations that the City received complaints about the latch or that other people had been injured as a result of the latch, Plaintiff's argument is unpersuasive. *Compare Leja v. Cmty. Unit Sch. Dist. 300*, 979 N.E.2d 573 (Ill. App. Ct. 2012) (dismissing a complaint for failing to sufficiently allege willful and wanton conduct, even though the plaintiff was instructed to use a faulty volleyball net crank, because the crank had never previously injured anyone), *and Oropeza v. Bd.*

*of Educ. of Chi.*, 606 N.E.2d 482 (Ill. App. Ct. 1992) (dismissing a complaint for not sufficiently alleging willful and wanton conduct in the defendant's failure to warn of a condition which had not caused prior injuries, even where the plaintiff and others were encouraged to use a defective basketball court), *with Straub v. Mt. Olive*, 607 N.E.2d 672 (Ill. App. Ct. 1993) (finding that the complaint sufficiently alleged willful and wanton conduct when the defendant had received complaints about a dangerous wire staking a tree and others had been injured by it), *and Scarano v. Ela*, 520 N.E.2d 62 (Ill. App. Ct. 1988) (finding willful and wanton conduct when the complaint alleged that other children had been injured by a defective slide before the plaintiff's injuries).

The Court finds that the Complaint does not set forth plausible allegations of willful and wanton conduct on the part of the City in the maintenance of the dasher boards. Plaintiff's claim is nothing more than an average negligence claim for which the City cannot be liable under the Tort Immunity Act. 745 ILL. COMP. STAT. 10/3-106. Therefore, Plaintiff's claim against the City is one for which relief cannot be granted and the City's Motion to Dismiss Complaint (Doc. 20) is granted. Since, the Complaint contains other claims against non-municipal actors, the Court will not dismiss the entire Complaint.

## II. The Crossclaims Against The City Must Be Dismissed As Well.

Sport Systems' and Johnston's crossclaims against the City seek contribution in the event that Sport Systems and Johnston (hereinafter the "Cross-Plaintiffs") are found liable for Plaintiff's injuries. (Doc. 13 at 1-2, Doc. 32 at 1-2). The basis for the crossclaims is the Illinois' Joint Tortfeasor Contribution Act, 740 ILL. COMP.

STAT. 100/1 *et seq*., which grants a right of contribution to joint tortfeasors "where 2 or more persons are *subject to liability in tort* arising out of the same injury to person . . . even though judgment has not entered against any or all of them," § 100/2(a) (emphasis added).

In its motions to dismiss the crossclaims, the City argues that the Cross-Plaintiffs failed to make factual allegations sufficient to overcome the City's immunity under the Tort Immunity Act. (Doc. 22 at 2). The City cites *Lietsch v. Allen*, 527 N.E.2d 978 (Ill. App. Ct. 1988), in support of the proposition that "absent a claim . . . for contribution arising out of willful and wanton conduct, 'compelling public policy considerations mandate that the immunity bar actions for contribution.'" (Doc. 22 at 2, Doc. 38 at 2). Thus, the City's argument is that since the Cross-Plaintiffs have failed to sufficiently allege in their crossclaims that the City was willfully and wantonly negligent in causing Plaintiff's injuries, the Tort Immunity Act also necessarily bars the crossclaims for contribution from the City for Plaintiff's injuries. While this argument is reasonable, it misses the point.

As discussed in the previous section, this Court is satisfied as a matter of law that the City's conduct, as alleged in the Complaint, cannot be considered willful and wanton. Thus, the City is not liable in tort to Plaintiff and cannot be deemed a joint tortfeasor under the Contribution Act, 740 ILL. COMP. STAT. 100/1 *et seq.* *Lietsch,* 527 N.E.2d at 980-81 (the court explained that "[a] nonsensical result is achieved by allowing the plaintiff to recover against a municipality only for willful and wanton misconduct while allowing a wrongdoing codefendant to recover in contribution for simple negligence.").

15

Neither Sport Systems nor Johnston discuss *Lietsch* in their responses nor has either party bothered to respond to the City's motion to dismiss in any meaningful way. Sport Systems seems to concede that if the Complaint cannot survive against the City, the crossclaim for contribution from the City cannot survive either. Sport Systems writes:

> SPORT SYSTEMS' Counterclaim against the CITY OF BLOOMINGTON for contribution is based on the event that SPORT SYSTEMS and CITY OF BLOOMINGTON "are found liable to Plaintiff" and that such liability can only flow from the allegations of the Plaintiff's Complaint.
>
> If the allegations of the Plaintiff's Complaint against the CITY OF BLOOMINGTON are sufficient to survive a Motion to Dismiss based on the Tort Immunity Act, then SPORT SYSTEMS' Counterclaim against the CITY OF BLOOMINGTON also survives a Motion to Dismiss.
>
> In the event that the court grants the CITY OF BLOOMINGTON'S Motion to Dismiss SPORT SYSTEMS' Counterclaim, it should be without prejudice pending discovery in this matter.

(Doc. 34 at 2). Johnston's Response contains very similar language. (Doc. 45 at 2). Neither Sport Systems nor Johnston ever addresses what should be done with their crossclaims in the event that the Court dismisses the Complaint as to the City.

"The [Joint Tortfeasor] Contribution Act was intended to impose liability only upon those *who are otherwise subject to liability in tort*." *Lietsch*, 527 N.E.2d at 980 (emphasis added). This language mirrors the actual wording of the statute, which grants a right of contribution only "where 2 or more persons are *subject to liability in tort*." 740 ILL. COMP. STAT. 100/2(a) (emphasis added). Absent a showing of willful and wanton conduct, the Tort Immunity Act expressly holds the City is not liable for negligence in maintaining the condition of its property. 745 ILL. COMP. STAT.

16

10/3-106. Thus, it seems rather straightforward that if the City is not subject to liability in tort to Plaintiff, as required by the Joint Tortfeasor Contribution Act, then neither Sport Systems, Johnston, nor any other co-defendant, can claim contribution from the City for damages arising from Plaintiff's alleged injuries. *See also McShane v. Chicago Inv. Corp.*, 546 N.E.2d 660 (Ill. App. Ct. 1989) (affirming the dismissal of a third-party claim for contribution against the City of Chicago where the third-party claimant was sued for negligence because of the Tort Immunity Act); *Martin v. Lion Unif. Co.*, 536 N.E.2d 736, 741 (Ill. App. Ct. 1989) (court held that "in the absence of either a statutory or common law duty [owed to the underlying plaintiff]," a contribution action pursuant to the Joint Tortfeasor Contribution Act could not be maintained against a local public entity where provisions of the Tort Immunity Act barred a direct action against the local public entity).

In conclusion, Section 3-106 of the Tort Immunity Act absolutely bars liability against the City in the absence of plausible allegations of willful and wanton conduct. The Court has determined the Plaintiff's allegations of willful and wanton conduct against the City are not plausible. Therefore, the City cannot be deemed to be subject to liability in tort to Plaintiff along with Sport Systems and Johnston. Consequently, there is no reason for this Court to deviate from the sound rationale of *Lietsch*, where the court explained that "[a] nonsensical result is achieved by allowing the plaintiff to recover against a municipality only for willful and wanton misconduct while allowing a wrongdoing codefendant to recover in

contribution for simple negligence." 527 N.E.2d at 980-81. Sport Systems' and Johnston's crossclaims against the City are dismissed.

## III.   CIAM's Motion To Dismiss Sport Systems' Counterclaim Is Baseless.

CIAM argues that Sport Systems has failed to satisfy Illinois' fact pleading requirements. (Doc. 44 at 3). CIAM ignores that federal pleading standards apply to state law claims in diversity actions, not state law pleading standards. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008). As the failure to satisfy Illinois pleading standards is the sole basis for CIAM's motion, it is wholly without merit. Therefore, CIAM's Motion To Dismiss Sport Systems Counterclaim is denied.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant City of Bloomington's Motion to Dismiss Complaint (Doc. 20) and Motions to Dismiss Counterclaim (Doc. 22 and Doc. 38) are GRANTED. Count I of the Complaint is DISMISSED with prejudice.[5] Sport Systems Unlimited Corp.'s Counterclaim against the City of Bloomington is DISMISSED with prejudice. Johnston Contractors, Inc.'s Counterclaim against the City of Bloomington is also DISMISSED with prejudice. Defendant City of Bloomington's Motion to Strike Exhibits (Doc. 39) is DISMISSED as MOOT. Central Illinois Arena Management, Inc.'s Motion to Dismiss the Counterclaim for Contribution of Sport Systems Unlimited Corp. (Doc. 44) is DENIED.

---

[5] When a court dismisses a claim pursuant to a Rule 12(b)(6) motion, the dismissal must be with prejudice because the claim is not one upon which relief can be granted. *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009). Amendment of the claim will only be allowed upon motion and upon a showing that such amendment would not be futile. *See Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011).

Entered this <u>17th</u> day of July, 2014.


                                                s/ Joe B. McDade
                                            JOE BILLY McDADE

                                    United States Senior District Judge