## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JUSMON RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-1146 |
| | ) | |
| CENTRAL ILLINOIS ARENA | ) | |
| MANAGEMENT, INC., JOHNSTON | ) | |
| CONTRACTORS, INC., SPORT SYSTEMS | ) | |
| UNLIMITED CORP., and DOVER | ) | |
| ENERGY, INC. d/b/a DE-STA-CO, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant Johnston Contractors, Inc.'s Motion for Summary Judgment (Doc. 72) against the Plaintiff, Jusmon Rivers. The motion has been fully briefed and is ready for disposition. Also pending before the Court is Plaintiff's Motion For Leave To Amend Complaint Against Johnston Contractors, Inc. (Doc. 83). For the reasons stated below, the Motion for Summary Judgment (Doc. 72) is GRANTED and the Motion For Leave To Amend Complaint Against Johnston Contractors, Inc. (Doc. 83) is DENIED.

### LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if

1

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the nonmovant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the nonmovant may not simply rest on his or her allegations in the complaint. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

## FACTS[1]

On May 17, 2013, Plaintiff was playing professional football in U.S. Cellular Coliseum ("the Coliseum"), a sports venue owned by the City of Bloomington, Illinois ("the City"). At some point during the game, Plaintiff collided with and fell through a gate built into dasher boards surrounding the football field. According to

---

[1] The facts come from the various submissions offered by both litigants.

the Plaintiff, the latch mechanism on the gate failed to keep the gate secure. Plaintiff suffered injuries from the collision and subsequent fall.

Plaintiff filed a four count complaint against four separate defendants: the City, Central Illinois Arena Management, Inc. ("CIAM"), Johnston Contractors, Inc. ("Johnston"), and Sport Systems Unlimited Corp. ("Sport Systems"). Count I charged the City with willful and wanton negligence in owning, operating, managing, and maintaining the Coliseum. Count II charged CIAM with general negligence in operating, managing, and maintaining the Coliseum on behalf of the City. Count III charged Johnston with general negligence in constructing the Coliseum and installing the dasher boards. Finally, Count IV charged Sport Systems with strict liability in designing and manufacturing the dasher boards in a defective manner. (Doc. 1 at 7). The City has since been dismissed from this suit as the complaint was found to lack allegations sufficient to constitute willful and wanton negligence necessary to overcome the City's municipal tort immunity. (Doc. 46). Sport Systems later filed a third-party complaint against De-Sta-Co, whom Sport Systems believes is responsible for the manufacture of the purportedly defective part that led the dasher board gate to fail. (Doc. 65). Plaintiff also amended his complaint adding De-Sta-Co as a defendant. (Doc. 64).

Johnston was engaged by the City to serve as the construction manager for the construction of the Coliseum. It entered into several agreements with the City, one of which contains language relevant to the disposition of this summary judgment motion. The contract provides in relevant part:

    2.1.6 SUBCONTRACTORS AND SUPPLIES

> The Construction Manager shall seek to develop subcontractor interest in the Project and shall furnish to the Owner and Architect for their information a list of possible subcontractors...
>
> 2.3.2 ADMINISTRATION
> The Construction Manager shall obtain bids from sub-contractors and from suppliers of materials or equipment fabricated to special design for the work and after analyzing such bids shall deliver such bids to the Owner and Architect. The Owner shall then determine, with the advice of the Construction Manager, and subject to the reasonable objection of the Architect, which bids will be accepted. The Owner will enter into contracts with the subcontractors with contracts acceptable to the Construction Manager.
>
> 2.3.2.8
> The Owner shall designate Construction Manager as owner`s representative on all subcontracts for construction work to be performed by third parties (subcontractors).

(Doc. 72-8).

Sport Systems agreed to supply, deliver and install the arena's dasher board system for the Coliseum. Sport Systems entered into an agreement with CIMCO refrigeration on March 15, 2005, regarding the supply, delivery and installation of the dasher board system. Sport Systems entered into a written contract with Mid-Central Illinois Regional Council of Carpenters Local 63 on November 10, 2005, to provide carpenters to assist in installation of the dasher board system. CIAM contracted with the City to manage, supervise and maintain the Coliseum, including the dasher board system. CIAM inspected the dasher board system after every sporting event. CIAM has replaced the latch that secured the gate/door to the dasher board system twice since 2012.

Johnston contends that no employees of Johnston participated in the procurement, supply, delivery or installation of the dasher board system. Johnston also contends that no employees of Johnston participated in replacing the latch in

either instance in which it was replaced. Johnston did not contract with any entity related to the supply, installation, delivery or maintenance of the dasher board system.[2] Johnston has provided an affidavit of its President, Bill Johnston, averring to these facts. (Doc. 72-3).

CIMCO regarded the dasher board system as a deviation of normal protocols because Sport Systems utilized a mechanically fastened dasher board system as opposed to a welded dasher board system. CIMCO notified Johnston of this and expressly sought Johnston's acceptance of the mechanically fastened system in order to avoid any future misunderstandings or disputes. Plaintiff has also presented evidence that in its role as construction manager of the Coliseum, Johnston received drawings of the dasher boards from Sport Systems. There is also a communication from a Johnston employee to CIMCO directing them not to proceed with the fabrication of any dasher board materials until Sport Systems' use of the fastening system over the welding system was resolved.

---

[2] Plaintiff asserts that "the contracts between the general contractor and any subcontractors are not in evidence" and Johnston failed to provide evidence regarding the contract it held with its subcontractors…." (Doc. 82 at 9). However, there is evidence no such contracts even exist. Johnston attached to its motion Sport Systems' answers to CIAM's interrogatories, in which CIAM asked "Did Sport Systems Unlimited Corp. enter into any written contract with the City of Bloomington or any other entity relating to work, service, delivery, installation, or maintenance of Arena Dasher Board System? If so, attach any and all contracts, agreements, or other evidence of such agreement." Sport Systems responded with no mention of entering into any contract with Johnston. Johnston also provided an affidavit of its President in which he averred that Johnston did not enter into any contracts with subcontracting entities. (Doc. 72-3 at ¶8). This supports Johnston's claim that it did not contract with any entity related to the supply, installation, delivery or maintenance of the dasher board system.

**DISCUSSION**

I. **The Plaintiff Has Not Produced Sufficient Evidence To Withstand Johnston's Motion For Summary Judgment.**

   A. **Plaintiff has not produced evidence that demonstrates Johnston exercised the type of control necessary to make a general contractor liable for an independent subcontractor's negligence.**

Plaintiff is suing Johnston for negligence by failing to exercise reasonable care while installing and/or constructing the subject dasher board gate/ door latching system in the Coliseum. The existence of a duty to the plaintiff is a necessary element of a negligence action. *Rahic v. Satellite Air-Land Motor Serv.,* 24 N.E.3d 315, 321 (Ill. App. Ct. 1st Div. 2014). Johnston contends in its motion that it should be dismissed from this suit because there is no genuine issue of material fact supporting the conclusion that it had a duty to protect Plaintiff from injuries associated with the use of the dasher board system installed in the Coliseum.[3]

---

[3] Johnston relies on additional grounds for summary judgment in its Reply (Doc. 84). For instance, Johnston contends 1) the mechanical fasteners do not actually relate to the latches on the dasher boards, and 2) there is no evidence that the mechanically fastened dasher board system was in a dangerous condition. The Court will not consider these additional grounds for two reasons. First, arguments not raised until a reply brief are deemed waived. *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). Johnston premised its motion on a lack of a duty to the Plaintiff and that is the only issue properly before the Court. Second, even if Johnston's additional points had merit, the Court would likely be ruling improvidently if it were to grant summary judgment on either of those additional points because generally "if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1182 (7th Cir. 2013) quoting *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006).

According to Johnston, it had no part in the procurement, supply, delivery, installation or maintenance of the dasher board system. Johnston also contends it did not contract with either Sport Systems or CIMCO to do anything.

According to Johnston, since it had a contract with the City to be the construction manager of the Coliseum, the only legal duties relating to the Coliseum for which it can be held accountable are those that are specifically delineated within the contract with the City itself. Johnston believes that since its contract with the City limits the duties of construction manager to only ensuring, *inter alia*, a safe work place for other employees engaged in building the Coliseum, to provide general administrative oversight to the construction site during the construction of the Coliseum and to assist in obtaining bids from sub-contractors and advise the owner as to the appropriateness of the bids, there can be no duty upon Johnston to ensure that the dasher board system was properly designed or installed. Johnston has cited no authority in support of this proposition other than *Marshall v. Burger King Corporation*, which held generally that the existence of a duty depends on "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." 856 N.E.2d 1048, 1057 (Ill. 2006).

In Illinois, the general rule is that a party that entrusts work to an independent contractor is not liable for that independent contractor's acts of negligence. *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 526 (Ill. 2010). In other words, generally, a construction manager/general contractor owes no duty to third parties harmed by the negligence of independent subcontractors. However, there is

7

an exception to this rule known as the "retained control exception" and it allows a general contractor or construction manager who has entrusted work to an independent contractor to be liable for acts of negligence when such a contractor retains sufficient control over any part of the work that causes an injury. *Id*. citing Restatement (Second) of Torts § 414 (1965).

The "retained control exception" allows for both vicarious and direct liability, depending on the degree of control the allegedly negligent defendant retained over the subcontractors. *Madden v. Paschen*, 916 N.E.2d 1203, 1218 (Ill. App. Ct. 1st Dist. 2009). For this exception to apply such that Johnston would be deemed <u>vicariously</u> liable there must be evidence to show Johnston retained a right of supervision over CIMCO and Sport Systems such that they were not entirely free to do the work in their own way. 930 N.E.2d at 527 citing Restatement (Second) of Torts § 414, Comment *c,* at 388 (1965). And for this exception to apply such that Johnston would be deemed <u>directly</u> liable there must be evidence to show Johnston knew or should have known that CIMCO and/or Sport Systems carelessly performed their work in such a way as to create a dangerous condition, and failed to exercise reasonable care either to remedy the condition itself or by the exercise of its control over CIMCO and Sport Systems to do so." 916 N.E.2d at 1221 citing Restatement (Second) of Torts § 414, Comment b, at 387 (1965).

Whichever liability, either direct or vicarious, Plaintiff seeks to assign to Johnston under § 414, Illinois case law makes clear at least two elements must be present: first, the negligent party must have entrusted the work to an independent contractor, and second, the negligent party must have retained sufficient control

8

over part of the work. *Calloway v. Bovis Lend Lease, Inc.*, 995 N.E.2d 381, 399 (Ill. App. Ct. 1st Dist. 2013) ("Whether a duty exists under section 414 turns on whether the defendant entrusted work to an independent contractor and yet retained control of any part of the independent contractor's work.").

The Court finds that Plaintiff has not presented enough evidence on the issue of retained control to survive summary judgment. The Restatement explains, and such explanation has been adopted by Illinois courts, that in order for the "retained control" exception to apply, it is not enough that the party against whom liability is sought merely to have retained "a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." Restatement (Second) of Torts § 414 Comment c.; *Martens v. MCL Const. Corp.*, 807 N.E.2d 480, 489 (Ill. App. Ct. 1st Dist. 2004).

The Plaintiff demonstrated that in Johnston's role as construction manager of the Coliseum, it received drawings of the dasher boards from Sport Systems. Plaintiff has also produced a communication from CIMCO to Johnston in which CIMCO sought Johnston's approval for what it perceived to be a deviation by Sports System in utilizing a fastening dasher board system instead of a welded system. Lastly, Plaintiff also produced a communication from a Johnston employee to CIMCO directing them not to fabricate any dasher board materials until Sport Systems' use of the fastening system over the welding system was resolved. The clear implication of this is that Sport Systems and CIMCO viewed Johnston as having a role in deciding the propriety of the dasher board system's design and

installation. None of the points raised by Plaintiff demonstrate Johnston exercised a right to direct Sport Systems or CIMCO in their work.

First, that Sport Systems provided drawings to Johnston and CIMCO sought Johnston's approval do not establish Johnston was in the decision maker over how these entities performed their work. Sport Systems' and CIMCO's subjective views of Johnston's role do not establish that Johnston had any control over how they performed the work they were hired to perform. This Court is unaware of precedent that allows a party to create a duty that does not otherwise exist merely by its subjective perception.

Second, Johnston's direction to CIMCO to delay fabrication of the dasher board materials called for by Sport System's design is entirely consistent with Johnston's contractual obligation to analyze and deliver to the Owner and Architect for decision the bids of subcontractors and suppliers of materials or equipment fabricated to special design for the work. Even more to the point, it is the sort of general supervisory oversight that expressly will not garner a general contractor liability under § 414. *See* Restatement (Second) of Torts § 414 Comment c.; *see also Martens v. MCL Const. Corp.*, 807 N.E.2d at 489. Lastly, while the email states the issue must be resolved, it is silent as was the final decision maker of which dasher board system was to be installed.

The case Plaintiff cites in support of its opposition to Johnston's motion, *Aguirre v. Turner Const. Co.*, 501 F.3d 825 (7th Cir. 2007), is inapplicable to the facts of this case and actually illustrates why Plaintiff's evidence misses the mark. The *Aguirre* court explained that "[i]n determining whether [a] level of control has

10

been retained [sufficient for the principal to incur liability], Illinois courts ask whether the principal merely retained general oversight of work progress and safety or actually engaged in detailed supervision and/or control of subcontractors' methods and means of performing work." *Id.* at 830. Plaintiff has presented no evidence that Johnston actually engaged in a detailed supervision or control of how Sport Systems or CIMCO performed their work. For example, in *Aguirre*, the plaintiff was injured in a scaffolding accident and sued the general contractor. *Id.* The court stressed that the principal there required the subcontractor to follow specific rules of scaffold construction. *Id.* at 831. The principal's employees regularly walked the worksite and had authority to require the subcontractor to correct any deficiencies observed in scaffolds. *Id.* The principal's employees regularly inspected many of subcontractor's scaffolds, and even imposed specific alternative design requirements. *Id.* There is no mention of Johnston engaging in any conduct remotely similar to the principal in *Aguirre*.

Given the lack of evidence that Johnston stood in a role of nothing more than a passive overseer of the complete operation, Plaintiff's claim against Johnston must fail.

**B.     Neither party has produced any evidence that demonstrates Johnston selected or retained Sport Systems or CIMCO.**

Control is not the sole requirement for liability under § 414; there must be evidence that the principal entrusted the subcontractor with its work. *O'Connell v. Turner Const. Co.*, 949 N.E.2d 1105, 1108 (Ill. App. Ct. 1st. Dist. 2011) (degree of control retained by a general contractor is irrelevant for establishing § 414 liability if it cannot be said that the general contractor entrusted the subcontractors with

11

the work). Strangely, neither party has even mentioned this requirement for § 414 liability in their papers. In its motion, Johnston stated generally that it "had no participation in the supply, delivery or installation of the Arena Dasher Board System, nor was it charged with inspecting the Arena Dasher Board System or its subsequent maintenance." (Doc. 72 at 7). Johnston also stated it did not contract with any entity related to the supply, installation, delivery or maintenance of the Arena Dasher Board System. (Doc. 72 at 4). These facts do not absolve Johnston from liability.

In *Sojka v. Bovis Lend Lease, Inc.*, the Seventh Circuit held that a general contractor there had entrusted work to an independent contractor. 686 F.3d 394, 399-400 (7th. Cir. 2012). Bovis argued it did not entrust work to the subcontractor because it did not enter into a contract with the subcontractor. *Id.* at 400. The court rejected that argument and relied on the uncontroverted fact that Bovis <u>selected the subcontractor</u> to support the district court's finding that Bovis had entrusted work to the subcontractor. *Id.* (emphasis added).

The Illinois appellate court in *Calloway* adopted the *Sojka* court's reasoning and explicitly held "the issue of entrustment, like that of control, should be decided based upon whether the circumstances of each case show that the construction manager <u>actually entrusted work</u> to a subcontractor and not based upon a bright-line test such as whether the construction manager actually signed the contract with the subcontractor." 995 N.E.2d at 399 (emphasis added).

The *Calloway* court also cited *Henderson v. Bovis Land Lease*, 848 F. Supp. 2d 847 (N. D. Ill. 2012), which has a particularly useful analysis of the entrustment

12

requirement. Henderson was an employee of a subcontractor who was injured while working on the job. *Id.* at 848. He sued the construction manager, Bovis, under the theory that Bovis breached its duty under § 414. *Id.* The *Henderson* court analyzed the applicable law on the requirements of § 414 and found that Henderson had not presented enough evidence that Bovis had actually entrusted Henderson's employer with subcontracting work. *Id.* at 852-53.

As Plaintiff does here, Henderson relied upon the contract between the owner and the construction manager as evidence of entrustment. There, the contract made the construction manager "responsible for soliciting bids from trade contractors, and for assisting [the owner] with its analysis of the bids." *Id.* at 852. The contract also provided the manager was responsible for "prepar[ing] lists of potential bidders and vendors and develop their interest in the Project"; "provid[ing] recommendations on bidder qualifications to [the owner] for [its] review and comment"; "organiz[ing] bid packages and prepare trade requisitions and other bid documents"; "prepar[ing] and distribut[ing] to prospective pre-qualified bidders all invitations to bid and all bid packages"; receiv[ing] the bids "on or before the deadline"; "analyz[ing] [the bids] and submit[ting] to [the owner] a comparison sheet showing ... [the manager's] written recommendation;" "consult[ing] with [the owner] with respect to the bids and shall assist [the owner] in analyzing the bids"; and "ensur[ing] that sub-subcontractors, material suppliers and proposed substitutions are acceptable to [the owner]." *Id.* Crucially, the court found that the contract did not give the construction manager "the final say in selecting subcontractors" and that the record

13

was silent as to what the construction manager "*actually* did—in the real world, on the ground—in connection with [the subcontractor's] retention." *Id*.

Based upon the applicable cases, the Court finds that there is also not enough evidentiary support of entrustment here to allow Plaintiff's claim against Johnston to proceed to the jury. The only evidence the Plaintiff can rely on to support a finding that Johnston entrusted work to the subcontractors is the contract between Johnston and the City. In *Calloway*, the court similarly looked to the contract between the construction manager and the owner to see whether there was support for a finding that the construction manager entrusted work to the subcontractor. 995 N.E.2d at 402. It focused on a section stating the construction manager was acting as the owner's agent in connection with the services it was providing under the agreement. *Id*. The contract here has a similar provision that states: "The Owner shall designate Construction Manager as owner`s representative on all subcontracts for construction work to be performed by third parties (subcontractors)." (Doc. 72-8 at 6). The import of this language is that Johnston was working directly with subcontractors on behalf of the City. *See* 995 N.E.2d at 402. But this language does not convey that it was Johnston's duty to select or retain subcontractors. Moreover, both *Calloway* and *Henderson* instruct that there must be some evidence that the construction manager really selected or retained the subcontractor to establish entrustment, not mere reliance on a document that shows the construction manager had the authority to act as the owner's representative with respect to subcontractors. Thus, the fact that the contract between Johnston

14

and the City called for Johnston to provide a list of subcontractors is insufficient to demonstrate entrustment of the work.

In fact, none of the language in the contract supports the finding that Johnston entrusted work to Sport Systems and/or CIMCO whereas there is language that supports the City retained the power to select and retain subcontractors. For example, the contract states: "The Construction Manager shall obtain bids from sub-contractors and from suppliers of materials or equipment fabricated to special design for the work and after analyzing such bids shall deliver such bids to the Owner and Architect. **The Owner shall then determine**, with the advice of the Construction Manager, and subject to the reasonable objection of the Architect, **which bids will be accepted**. **The Owner will enter into contracts with the subcontractors** with contracts acceptable to the Construction Manager. (Doc. 72-8 at 5 (emphasis added)). The bolded language above conveys that it was the City—not Johnston—who selected which subcontractor bids to accept.

Even if Johnston's contract with the City did not contain such language, the Plaintiff's claim against Johnston would still fall short. As explained in *Henderson*, a contract alone is not enough to satisfy the evidentiary burden of demonstrating entrustment of work. The Plaintiff has not addressed the issue of entrustment and he has thus failed to explain how the available evidence supports a finding that Johnston actually entrusted the dasher board work to Sport Systems or CIMCO. Under Federal Rule of Civil Procedure 56, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the

15

burden of proof at trial," which means the time to show his evidentiary hand is now in response to the summary judgment motion. *Warsco*, 258 F.3d at 563. Plaintiff has not met his burden.

The Court is not unmindful that Plaintiff requested the Court to stay these proceedings under Rule 56(d), presumably in order to gather facts essential to justify his opposition to the underlying motion for summary judgment. But his request was very terse, open-ended and did not provide specific reasons why a stay or continuance of the summary judgment proceedings was necessary. Moreover, the motion itself stated that substantial discovery had already been exchanged amongst the parties including initial disclosures, answers to interrogatories, and documents produced pursuant to the parties' requests for production. (Doc. 78 at ¶5). Thus, Plaintiff's failure to produce evidence on whether Johnston actually entrusted work to CIMCO and Sport Systems is not excusable and the Court must rule accordingly.

Johnston's motion for summary judgment is granted.

## II.     There Is No Reason To Allow Plaintiff To Amend His Claim Against Johnston.

Plaintiff has requested to amend the Amended Complaint (Doc. 64) by substituting two paragraphs in the count against Johnston. It currently reads:

> 24. Defendant JOHNSTON CONTRACTORS, INC. installed and/or constructed the Coliseum's arena, including its dasher board gate/door latching system.
>
> 25. Johnston negligently failed to exercise reasonable care while installing and/or constructing the subject dasher board gate/ door latching system of US Cellular Coliseum's arena.

(Doc. 64 at 5). Plaintiff would like to change those two paragraphs as follows:

>    24. Defendant JOHNSTON CONTRACTORS, INC. as Construction Manager, knew of the fastener problems/issues involving the subject Sport Systems, Unlimited dasher board with the subject fasteners/latching system installed and/or constructed at the Coliseum's arena.
>
>    25. Johnston negligently and/or wantonly failed to exercise reasonable care when it as Construction Manager allowed/permitted the installation and/or construction of the subject dasher board gate/door latching system at US Cellular Coliseum's arena. The subject dasher board's fastener/latching system failed causing the dasher board to open/come undone while Plaintiff was participating/playing in a football game at the Coliseum.

(Doc. 83-1 at 5).

Amending the complaint at this point would be futile. As the Court explained earlier in this Order and Opinion, regardless of whether Plaintiff wishes to pursue a direct liability claim or a vicarious liability claim against Johnston, he must still show evidence of both control and entrustment pursuant to § 414. *O'Connell*, 949 N.E.2d at 1108; *Sojka*, 686 F.3d at 399-400. Plaintiff's proposed paragraphs would not relieve him of his evidentiary burden of producing facts that make § 414 applicable to this case. Therefore, his request to amend the complaint is denied.

### III. The Counterclaims Against Johnston For Contribution Must Be Dismissed.

On May 9, 2014, Defendant Sport Systems filed a counterclaim against Johnston (Doc. 13 at 4). On July 2, 2014, Defendant CIAM did the same. (Doc. 42 at 2). The sole basis of both the counterclaims was Johnston's possible liability to the counterclaiming defendants for contribution pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/1 *et. seq.*, in case Plaintiff was to succeed against the several defendants.

Illinois law is clear that

> [A] party's obligation to make contribution [under the Joint Tortfeasor Contribution Act] rests on his liability in tort to the injured or deceased party, *i.e.,* the plaintiff in the underlying action. There is no requirement that the bases for liability among the contributors be the same. However, some basis for liability to the original plaintiff must exist. If a defendant is not a tortfeasor *vis-a-vis* the original plaintiff, it cannot be a joint tortfeasor *vis-a-vis* a codefendant and may not be held liable to that codefendant for contribution.

*Vroegh v. J & M Forklift*, 651 N.E.2d 121, 125 (Ill. 1995) (citations omitted). As explained earlier on pages 10 through 14 of this Opinion and Order, there is no basis for Johnston to be held liable to Plaintiff for the injuries he complains of in the Amended complaint. Thus, under *Vroegh*, there is similarly no basis for Johnston to be found a joint tortfeasor *vis-à-vis* CIAM and Sport Systems following the Court's grant of summary judgment in Johnston's favor and their counterclaims against Johnston must be dismissed.

## CONCLUSION

IT IS THEREFORE ORDERED that for the foregoing reasons, Defendant Johnston Contractors, Inc.'s Motion for Summary Judgment (Doc. 72) is GRANTED and the Motion For Leave To Amend Complaint Against Johnston Contractors, Inc. (Doc. 83) is DENIED. Defendant Central Illinois Arena Management, Inc.'s Counterclaim against Johnston Contractors, Inc. (Doc. 42) is DISMISSED. Defendant Sport Systems Unlimited Corp.'s Counterclaim Against Johnston Contractors, Inc. (*see* Doc. 13) is DISMISSED. Johnston Contractors, Inc. is terminated from this litigation.

Entered this <u>14th</u> day of September, 2015.

s/ Joe B. McDade
JOE BILLY McDADE

United States Senior District Judge