**E-FILED**
Thursday, 14 April, 2016  02:27:22 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JUSMON RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-1146 |
| | ) | |
| CENTRAL ILLINOIS ARENA | ) | |
| MANAGEMENT, INC., SPORT SYSTEMS | ) | |
| UNLIMITED CORP., and DOVER | ) | |
| ENERGY, INC. d/b/a DE-STA-CO, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R   &   O P I N I O N

This matter is before the Court on Defendant Sport Systems Unlimited Corp.'s (hereinafter "SS") Motion for Summary Judgment (Doc. 95) against the Plaintiff, Jusmon Rivers. The motion has been fully briefed and is ready for disposition. Also pending before the Court are three ancillary motions, including Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 98), Defendant SS's "Motion To Strike Certain Exhibits Attached To Plaintiff's Response In Opposition To Defendant Sport Systems Unlimited Corporation's Motion For Summary Judgment" (Doc. 104) and finally, Plaintiff's "Motion For Leave To Resubmit Exhibits 2, 3, 4 And 5 In Response To Defendant Sport Systems Unlimited's Motion For Summary Judgment" (Doc. 108). For the reasons discussed below, Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 98) is DENIED, Plaintiff's "Motion For Leave To Resubmit Exhibits 2, 3, 4 And 5 In

Response To Defendant Sport Systems Unlimited's Motion For Summary Judgment" (Doc. 108) is GRANTED and Defendant SS's "Motion To Strike Certain Exhibits Attached To Plaintiff's Response In Opposition To Defendant Sport Systems Unlimited Corporation's Motion For Summary Judgment" (Doc. 104) is DENIED. Finally, Defendant's Motion for Summary Judgment (Doc. 95) is GRANTED.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the nonmovant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the nonmovant may not simply rest on his or her allegations in the complaint. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith*

*v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

## FACTS[1]

On May 17, 2013, Plaintiff was playing professional football in U.S. Cellular Coliseum ("the Coliseum"), a sports venue owned by the City of Bloomington, Illinois ("the City"). At some point during the game, Plaintiff jumped over a dasher board which was struck by a player behind him causing the dasher board to open and/or come undone. The dasher board collided with Plaintiff causing a serious and significant anterior cruciate ligament (ACL) and medial collateral ligament (MCL) injury to his knee. Plaintiff has incurred medical expenses and other damages as a result of said incident.

Plaintiff filed a four count complaint against four separate defendants: the City, Central Illinois Arena Management, Inc. ("CIAM"), Johnston Contractors, Inc. ("Johnston"), and Sport Systems Unlimited Corp. ("Sport Systems"). Count I charged the City with willful and wanton negligence in owning, operating, managing, and maintaining the Coliseum. Count II charged CIAM with general negligence in operating, managing, and maintaining the Coliseum on behalf of the City. Count III charged Johnston with general negligence in constructing the Coliseum and installing the dasher boards. Finally, Count IV charged Sport Systems with strict liability in designing and manufacturing the dasher boards in a defective manner. (Doc. 64 at 5-6). The City has since been dismissed from this suit.

---

[1] The facts come from the various submissions offered by both litigants.

(Doc. 46). Johnston has also since been dismissed from this action. (See Doc. 86).Sport Systems later filed a third-party complaint against De-Sta-Co, whom Sport Systems believes is responsible for the manufacture of the purportedly defective part that led the dasher board gate to fail. (Doc. 65). Plaintiff also amended his complaint adding De-Sta-Co as a defendant. (Doc. 64).

SS agreed to supply, deliver and install the dasher board system for the Coliseum. SS entered into an agreement with CIMCO Refrigeration on March 15, 2005, regarding the supply, delivery and installation of the dasher board system. SS entered into a written contract with a union on November 10, 2005 to provide carpenters to assist in the installation of the dasher board system. CIAM contracted with the City of Bloomington to manage, supervise and maintain the Coliseum, including the dasher board system. CIAM reportedly inspected the dasher board system after every sporting event. CIAM replaced the original latch that secured the gate/door to the dasher board system with replacement latches of the same type and model number twice since 2012. The replacement latch that secured the gate/door to the dasher board system at the time of Plaintiff's incident was ordered by CIAM from SS on April 25, 2012.

De-Sta-Co designed and manufactured the Model No. 341-R latch clamp that was installed on the gate against which Plaintiff collided. De-Sta-Co was not aware of any defect, actual or potential problem, safety concerns existing, anticipated or considered to exist relating to the Model No. 341-R latch clamp. De-Sta-Co was also not aware that its latch was being utilized as a component part of the SS's dasher board system. SS obtained the replacement latch that was installed on the gate

against which Plaintiff collided from Davco Tooling, Inc., the same company from which SS had obtained the original latch. Scott Purkey, an employee of the City, installed the replacement latch that secured the gate/door to the dasher board system at the time of Plaintiff's injury. Neither SS nor any of its employees provided direction to Purkey regarding the installation of the replacement latch not participated in the installation of the latch.

SS never tested whether the dasher board could withstand the force of players colliding with it. The dasher board system was also equipped with plunger pins as an additional measure to ensure the gate was locked and aligned and they complemented the De-Sta-Co latching mechanism. When the plunger pins are engaged, the gate will not open. Plaintiff's expert, Frank Burg, opines that the gate's plunger pins were not in place at the time of Plaintiff's incident.

## Procedural Matters

The original complaint in this case was filed on April 16, 2014. (Doc. 1). On September 9, 2014, a Rule 16 scheduling order was entered that allowed amendment of pleadings until July 10, 2015. (Doc. 51). The Complaint was amended on May 13, 2015. (Doc. 64). On June 6, 2015, former party Johnston Contractors, Inc. moved for summary judgement. (Doc. 72).  While that motion was pending, Plaintiff attempted to file a motion to amend his complaint. (Doc. 83). The instant motion for summary judgment was filed on February 4, 2016. (Doc. 95). Plaintiff has again attempted to file another motion to amend his complaint. (Doc. 98).

**DISCUSSION**

**I.      The Plaintiff Shall Not Be Allowed To Amend The Complaint.**

In Plaintiff's motion to amend the complaint, he cites the standard of Federal Rule of Civil Procedure 15(a)(2) for the proposition that the Court should freely give leave to amend whenever justice so requires. However, he does not explain why justice requires amendment in this instance. He simply states in a single sentence that evidence adduced during discovery ameliorates any prejudice that could be suffered by the other litigants should his motion be granted. This is patently insufficient to warrant granting a motion to amend pleadings at this stage of the litigation.

A party must satisfy the requirements of Rule 16 when he seeks to amend a pleading after the deadline set out in the Rule 16 scheduling order has passed. *Alioto v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011). In *Alioto*, the court took note that the request to amend the pleadings came several months after the deadline for amending the pleadings had passed and also after the defendants had filed a motion to dismiss the complaint. *Id.* at 720. Here, the Plaintiff has similarly let several months pass before making this motion to amend and it also comes subsequent to, and seemingly in response to, SS's motion for summary judgment. Alioto candidly explained to the court that he had not realized his complaint was deficient until the defendants filed their motion to dismiss. *Id.* Plaintiff offers no explanation of why amendment of his complaint is necessary, but the Court can easily deduce that he understands that his strict liability claim will not fare well under the scrutiny of summary judgment, and so he wishes to include the failure to

6

warn claim as a way to avoid summary judgment. This sort of gamesmanship is clearly disfavored. *Alioto*, 651 F.3d at 720 ("[Plaintiff's] explanation does not pass muster.... [A] party should always ask itself whether the complaint it wants to file sets out a viable claim.... As the 1983 advisory committee note explains, among the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case "moving toward trial." [T]he proposed amended complaint added at least one new theory and overhauled another. In light of Alioto's conduct and the purposes of Rule 16, the district court committed no abuse of its discretion in denying leave to amend.).

If a party desires to modify a scheduling order, Rule 16(b)(4) provides that it may only be done "for good cause shown and with the judge's consent." "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *United States v.1948 South Martin Luther King Dr.*, 270 F.3d 1102, 1110 (7th Cir. 2001). Nowhere in his motion does Plaintiff acknowledge the proper "good cause" standard of Rule 16(b)(4), let alone address its requirements. Therefore, his request to amend the First Amended Complaint must be denied.

## II.     The Plaintiff Cannot Survive Summary Judgment.

### A.     The Illinois Seller's Exception Does Not Apply.

There seems to be some confusion as to what product is actually at issue in this lawsuit. SS contends only the latch is claimed to be the allegedly defective product. Indeed, the First Amended Complaint states "At the time of the incident, the subject arena's dasher board's gate/door was closed and secured by a latch that

7

failed." (Doc. 64 at 3). Plaintiff also answered several interrogatories in a manner that suggested only the latch was at play in this suit. However, elsewhere in the Complaint, Plaintiff clearly alleges the

> arena dasher board system was in a defective condition at the time of its first distribution and sale for use. The defective and unreasonably dangerous conditions existing in the subject arena dasher board system at the time it left the control of Sport System included, but were not limited to: design defects, manufacturing defects, defective locks/latching devices. On and before May 17, 2013, the dasher board system distributed and sold was in an unreasonably, dangerous condition in that the dasher board system and its latching system would fail during upon contact during sporting events.

(Doc 64 at ¶¶29-31).

SS seizes upon Plaintiff's focus on the latch to argue that the Illinois seller's exception shields it from liability. However, the seller's exception is inapplicable here.

In Illinois, the general rule is that all entities in the chain of distribution for an allegedly defective product are subject to strict liability in tort. *Hammond v. N. Am. Asbestos Corp.,* 454 N.E.2d 210 (Ill. 1983). 735 Ill. Comp. Stat. 5/2-621 provides a "seller's exception" to this rule and it requires a court to dismiss a <u>non-manufacturer</u> defendant from a strict liability product claim, if the defendant certifies the correct identity of the manufacturer of the defective product and the plaintiff has filed a complaint against the manufacturer and the manufacturer has served an answer or the time to do so has run out. *Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844, 848 (N.D. Ill. 2013) (emphasis added).

The defective product at issue here is not the latch alone. SS did not manufacture the latch, nor did it sell the latch. SS manufactured the dasher board

system, which the Court understands the Plaintiff to argue made use of the latch in an unsafe manner. Plaintiff states "the dasher board's… gate which incorporated [the] latch was a defectively designed product which has failed at least on two (2) occasions…. The defectively designed… gate failed due to a design defect issue in utilizing the subject model latch as a component part." (Doc. 100 at 14). If Plaintiff <u>only</u> alleged the latch was defective then the seller's exception for non-manufacturing defendants would be applicable here because SS did not manufacture the latch, De-Sta-Co did. But SS did manufacture the dasher board system, and there are sufficient allegations in the Complaint that SS's use of the latch within its finished dasher board system is the product at issue in this strict product liability count. For these reasons, the seller's exception to strict tort liability is unavailable to SS as it is not a non-manufacturing defendant. However, it is still Plaintiff's burden to plead and prove that by incorporating the latch in its design of the dasher board system, SS created a defectively designed product.

**B.     There is zero evidence the dasher board system was defectively designed.**

SS also claims there is no evidence that the dasher board system was in an unreasonably dangerous condition when it left SS's control. Much of the evidence provided by Plaintiff in its response to the summary judgment motion speaks to SS's alleged failure to warn. That claim is not a part of these proceedings as the Court has not allowed amendment of the First Amended Complaint, so therefore, such evidence is not relevant. What is relevant is whether or not the Plaintiff has produced any evidence that the dasher board system was defective when it left the control of SS. *See Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525 (Ill. 2008) ("a

plaintiff must plead and prove that the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control. "). The Court finds that it has not.

Plaintiff offers two expert opinions in support of his claim. The first report provides the opinion of Frank Burg that

> Sports Systems Unlimited... should have assured that the latch and stabilizers used on the... gate were safe suitable and proper for Arena Football activities. The area in the end zone which would have the greatest exposure from contact with players must be provided with hardware and material which will withstand the forces of players attempting to catch footballs in the end zone…. In this case, of this dasher board, that had broken and defective hardware, did not have the capability of being latched properly and it was not properly maintained.

(Doc. 101-1 at 9). Burg's opinion on what SS "should have" done is nothing more than an unsupported suggestion. Moreover, it does not address whether the dasher board was or was not capable of being properly latched when the product left SS's control. In the second report, David Ahearn, another expert, opines in relevant part that

> The hook and latch were not aligned properly causing uneven distribution of loading on the hook tangs…. Uneven loading caused the one hook tang to receive excess load and resulted in that tang breaking. <u>The design of the latch and door system did not provide a self-alignment adjustment to ensure that the U-bolt would engage both hook tangs evenly.</u> The hook was broken prior to the subject incident…. The fracture surface of the broken hook tang contains rust, while the fracture surface created by the bending of the remaining hook tang is not rusted. The two fracture surfaces are in close proximity and therefore would have been subjected to similar environments. This close proximity means that <u>the difference in rusting is indicative of the broken tang fracture surface having been exposed for a longer period of</u>

10

<u>time prior to the event</u>, while the fracture surface created by the bending of the remaining tang occurred during the subject event. <u>Use of the latch with the hook missing a tang was improper maintenance that resulted in a weaker latched connection. Use of the latch when it would not lock shut is improper maintenance.</u> The tab that engages the toggle lock was bent where the lock could not engage. <u>Impact marks on the tab indicate that the tab was not bent due to a single event, but rather multiple events</u>.

(Doc. 100-4 at 11) (emphasis added). This evidence clearly indicates that the latch had worn down over time and was improperly maintained. Based upon what has been presented to this Court so far, it was squarely the responsibility of CIAM to maintain the dasher board system as part of its larger responsibility for the Coliseum, not SS. Plaintiff makes much of the fact that the dasher board gate and its latching system were never tested. But that is beside the point. Simply because the system may not have been tested does not mean that the system was inherently defective. Plaintiff is responsible for producing evidence that the dasher board gate was incapable of withstanding the force of players colliding with it when it left SS's control. He has not done so.

Moreover, taking the assertion—that the misalignment of the latch and hook was the ultimate cause of Plaintiff's injury—as true, there is zero discussion by the experts in their reports or in the parties' briefs of whether the misalignment existed at the time SS placed the dasher board into commerce, whether this misalignment occurred as a result of Scott Purkey replacing the latch, or whether CIAM's poor maintenance allowed the misalignment to occur over time and go uncorrected.

One method of proving a product claimed to suffer from a design defect is unreasonably dangerous is for a plaintiff to present evidence of an alternative design that would have been more feasible to utilize. *Mikolajczyk*, 231 Ill. 2d at 525-

11

26. Ahearn's report can be fairly read to contend that it was unreasonably dangerous to produce a dasher board gate without a self-alignment mechanism. However, there is zero discussion in his report or the parties' briefs on whether implementing a self-alignment measure into the design of the latch and door system was either feasible or more preferable than the plunger pin mechanism that was installed or for that matter, preferable to human spot-checking before and after use, which is apparently what CIAM was supposed to be doing. Thus, the Plaintiff has failed to produce crucial evidence in support of his claim of strict liability.

Another problem with the Plaintiff's claim of design flaw is that his undisputed factual assertions actually tend to undermine any contention that the board was designed in an unreasonable fashion. Plaintiff claims that 1) plunger pins were an additional measure to ensure the gate was locked and aligned and they complemented the latching mechanism; 2) when the plunger pins are engaged, the gate will not open and 3) that the gate's plunger pins were not in place at the time of Plaintiff's incident. There is no evidence that the plunger pins were defective or were not working when the board left the control of SS. Surely CIAM, as the on-the-spot maintainers of the dasher board system, bore the responsibility of ensuring the plunger pins were in use. If it is true that properly engaged plunger pins would have prevent the failure of the hook and latch, then the Court does not believe one can argue that the board system was designed in a defective or unreasonably dangerous manner.

It is the plaintiff's burden to prove each element of his claim and it is his burden to produce sufficient evidence on summary judgment to convince the court

that the claim should proceed to a jury. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco*, 258 F.3d at 563 (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). The Plaintiff has failed to carry his burden.

In sum, after taking Plaintiff's expert's contentions concerning the cause of the latch's failure as true, there is no evidence that the defect identified by Plaintiff existed in the dasher board gate when it left SS's control nor has there been any evidence offered that it was unreasonably dangerous for the board to be produced without a self-aligning mechanism for the hook and latch. For all these reasons, summary judgment is appropriate for SS on the strict liability count.

## CONCLUSION

IT IS THEREFORE ORDERED that for the foregoing reasons, Defendant Sport Systems Unlimited Corp.'s Motion for Summary Judgment (Doc. 95) is GRANTED. Plaintiff's Motion For Leave To File Second Amended Complaint (Doc. 98) is DENIED, Plaintiff's "Motion For Leave To Resubmit Exhibits 2, 3, 4 And 5 In Response To Defendant Sport Systems Unlimited Corp.'s Motion For Summary Judgment" (Doc. 108) is GRANTED and Defendant SS's "Motion To Strike Certain Exhibits Attached To Plaintiff's Response In Opposition To Defendant Sport Systems Unlimited Corporation's Motion For Summary Judgment" (Doc. 104) is DENIED.

Entered this 14th day of April, 2016.

s/ Joe B. McDade
JOE BILLY McDADE

United States Senior District Judge